# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ARTHUR LEE GARRISON,

     Plaintiff

v.

NEVADA DEPARTMENT OF
CORRECTIONS, et. al.,

     Defendants

Case No.: 3:18-cv-00389-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 90

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 90, 90-1 to 90-5, 92-1 to 92-3.) Plaintiff filed a response (ECF No. 96), and Defendants filed a reply (ECF No. 98).

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) Defendants are Dr. Joseph Walls and Nurse John Keast.

The court screened Plaintiff's complaint, and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Walls and Nurse Keast, as well as the John Doe medical director. (ECF No. 5.) Plaintiff never identified the John Doe medical director, and Judge Du recently accepted the undersigned's report and

recommendation that this action proceed only on the Eighth Amendment claim against Dr. Walls and Nurse Keast. (*See* ECF No. 106.)

Plaintiff alleges that he suffers from a bone deformity, and he saw Dr. Walls for pain treatment in November of 2017, but Dr. Walls would not listen to Plaintiff and did not address Plaintiff's issues. Instead, Dr. Walls suggested re-breaking Plaintiff's arm, but then ignored Plaintiff. In addition, Plaintiff avers that on January 10, 2018, he was referred to a neurologist, and Nurse Keast was responsible for scheduling the referral, but as of August 15, 2018, he was still waiting for treatment.

Defendants move for summary judgment, arguing that they were not deliberately indifferent to Plaintiff's serious medical needs, and that they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Eighth Amendment Deliberate Indifference to Serious Medical Needs

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698

4

F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further

significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at

1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with

deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of the facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

interfere[s] with medical treatment, or it may be shown by the way in which prison officials

provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

quotation marks and citation omitted).

Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that

the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical

professionals—concerning what medical care is appropriate does not amount to deliberate

indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**B. Dr. Walls**

Dr. Walls saw Plaintiff at Northern Nevada Orthopedic Clinic on May 1, 2017, for complaints of left wrist pain. Plaintiff reported a forearm fracture at age six that was treated with a cast. Plaintiff asked Dr. Walls to state that Plaintiff is disabled or handicapped. Dr. Walls examined him and diagnosed him with chronic left forearm malunion. Dr. Walls did not recommend intervention or surgery, as the results would not have been predictable. According to Dr. Walls, he did not suggest re-breaking Plaintiff's arm. In Dr. Walls' medical opinion, there was no immediate treatment for Plaintiff's condition. (Walls Decl., ECF No. 90-3; ECF No. 92-3 at 4.)

Dr. Walls also saw Plaintiff on October 16, 2017, for complaints of pain from his umbilicus to his spine. Specifically, Plaintiff complained of popping in his left hip and lumbar spine. He said he jumped from a van in September of 2015, and since then has had lumbar popping and pain radiating from his belly button to his back bone. At that time, he was taking Tegretol, but he told Dr. Walls he was not sure it was helping.  On examination, Dr. Walls noted that Plaintiff walked full weight bearing on both legs with a walker. He had no erythema or effusion to the back or left hip. His straight leg test was negative. Dr. Walls explained to Plaintiff that he did not recognize his pattern of subjective complaints as a problem he could fix or for which he could recommend any treatment. (Walls Decl., ECF No. 90-3; ECF No. 92-3 at 2-3.)

Plaintiff filed a grievance on November 17, 2017, stating he did not believe he was receiving adequate care for the severe pain he was experiencing in his lower back, left shoulder, neck, and left leg. He said that he had requested that Dr. Walls perform and/or refer him for further diagnostic procedures to find out what was wrong, but Dr. Walls refused other procedures, such as an MRI. (ECF No. 90-1 at 2-3.) C. Lucas responded that Plaintiff was a "no show" for an appointment on December 11, 2017, to discuss his concerns and plan of care, and had been rescheduled. (ECF No. 90-1 at 8.)

Plaintiff filed a first level grievance on January 30, 2018, stating that he did show up for his appointment, and they checked his vitals and temperature and said he could go. (ECF No. 90-1 at 10.) D. Richard responded that there was no documentation to support Plaintiff's claim he was present at the appointment.  Richard noted Plaintiff was seen on February 13, 2017, for his complaint of his hip popping. He was seen again on April 24, 2017, and no further orders were given at that time. He was also seen for complaints of hip and back pain and hip popping on September 14, 2017. X-rays were taken and an outside orthopedic consultation was requested, and approved. He saw the outside orthopedic provider on October 16, 2017, and was assessed at that time for his complaints of orthopedic pain. He was advised that no further follow up was needed as the x-rays and assessment were negative and unremarkable. He was seen again on January 10, 2018, for complaints of orthopedic pain and a neurology consult was requested. (ECF No. 90-1 at 12.)

Plaintiff filed a second level grievance on April 27, 2018, stating that the pain needed to be resolved by a real doctor. (ECF No. 90-1 at 15.) R. Aranas responded that if his medical issue was unresolved he should submit a kite to be re-evaluated. (*Id*. at 14.)

Plaintiff's response to Defendants' motion for summary judgment merely states that

1  Dr. Walls did not make any recommendations and would not declare Plaintiff handicapped or

2  disabled. In addition, Plaintiff claims that Nurse M. Michaels used Plaintiff's criminal history to

3  sway Dr. Walls' judgment without pointing to any evidence to support this assertion. Plaintiff

4  also claims in his response that he has 20 % use of his left arm from the shoulder down, but Dr.

5  Walls did not recognize this or treat this condition. Again, Plaintiff does not provide any

6  *evidence* to support this claim. He does not make these statements in a declaration or affidavit.

7  Nor does he point the court to any medical records to corroborate his conclusions.

8       Plaintiff presents a difference of opinion with Dr. Walls decision not to recommend

9  further treatment; however, Plaintiff does not point the court to any evidence to demonstrate that

10 Dr. Walls' determination was medically unacceptable under the circumstances, or that it was

11 chosen in conscious disregard of an excessive risk to Plaintiff's health.

12      Therefore, summary judgment should be granted in favor of Dr. Walls.

13 **C. Nurse Keast**

14      A referral to neurology was ordered on January 10, 2018.

15      In his declaration, Nurse Keast states that he is not responsible for scheduling outside

16 referrals to providers, and he was not advised that Plaintiff required an outside consultation.

17 Instead, when an appointment is required with an outside provider, the institutional provider will

18 write an order for the referral, and this is sent to the Utilization Review Panel (URP) for

19 approval. If approved, the form is given to the case manager at NNCC, who then schedules the

20 appointment. Keast is not involved in scheduling appointments with outside providers, and is not

21 the case manager at NNCC. Keast maintains he had nothing to do with scheduling an

22 appointment with a neurologist for Plaintiff. (Keast Decl., ECF No. 90-4.)

23

8

Nurse Keast provides evidence that he did not personally participate in any alleged constitutional violation related to scheduling of the neurology appointment. Plaintiff has not submitted evidence in his response to raise a genuine dispute of material fact as to whether Nurse Keast had any involvement with scheduling the neurology appointment. Plaintiff does include a grievance where he claimed that Nurse Melissa had something to do with his not being seen by a neurologist (ECF No. 96 at 24-26), but this does not demonstrate that *Keast* was involved. Moreover, Plaintiff eventually abandoned this grievance, stating that Dr. Johns told him that she (presumably Nurse Melissa/Nurse Michaels) was a good nurse, and he believed Dr. Johns. (ECF No. 96 at 33-34.) In fact, Plaintiff's response states that M. Michaels overrode Keast and cancelled Plaintiff's appointment. (ECF No. 96 at 1.) This contradicts Plaintiff's claim that Keast as responsible for failing to schedule the neurology appointment.

Therefore, there is no evidence of deliberate indifference, and summary judgment should be granted in Keast's favor.

**D. Conclusion**

Defendants have submitted evidence to demonstrate they were not deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff has not provided evidence to create a genuine dispute of material fact regarding whether they were deliberately indifferent. Therefore, Defendants' motion for summary judgment should be granted, and the court need not reach Defendants' qualified immunity argument.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 90).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 12, 2021

_William G. Cobb_____
William G. Cobb
United States Magistrate Judge